UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| SHARON GILLASPIE,<br><br>     Plaintiff,<br><br> vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration,<br><br>     Defendant. | CIV. 14-5023-JLV<br><br>ORDER |

## INTRODUCTION

Plaintiff Sharon Gillaspie filed a complaint appealing from an administrative law judge's ("ALJ") decision denying disability benefits. (Docket 1). Defendant[1] denies plaintiff is entitled to benefits. (Docket 9). The court issued a briefing schedule requiring the parties to file a joint statement of material facts ("JSMF"). (Docket 11). The parties filed their JSMF. (Docket 16). For the reasons stated below, plaintiff's motion to reverse the decision of the Commissioner (Docket 17) is denied.

## FACTUAL AND PROCEDURAL HISTORY

The parties' JSMF (Docket 16) is incorporated by reference. Further recitation of salient facts is included in the discussion section of this order. On June 16, 2011, Ms. Gillaspie applied for Social Security disability and

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.

supplemental security income benefits alleging a disability date of May 15, 2011. Id. ¶ 1. An evidentiary hearing was held on November 15, 2011, before an ALJ. Id. On December 12, 2012, the ALJ issued a decision finding Ms. Gillaspie was not disabled and denying benefits. Id.; see also Administrative Record at pp. 10-23.[2] Ms. Gillaspie sought review by the Appeals Council, which denied the request. (Docket 16 ¶ 1). The ALJ's decision is the final decision of the Commissioner of the Social Security Administration. Ms. Gillaspie timely filed a complaint requesting judicial review. (Docket 1).

The issue before the court is whether the ALJ's decision that Ms. Gillaspie was not "under a disability within the meaning of the Social Security Act, from May 15, 2011, through [December 12, 2012]" is supported by the substantial evidence in the record as a whole. (AR at p. 23); see also Howard v. Massanari, 255 F.3d 577, 580 (8th Cir. 2001) ("By statute, the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.") (internal quotation marks and brackets omitted) (citing 42 U.S.C. § 405(g)).

## STANDARD OF REVIEW

The Commissioner's findings must be upheld if they are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006); Howard, 255 F.3d at 580. The

---

[2]The court will cite to information in the administrative record as "AR at p. ____."

court reviews the Commissioner's decision to determine if an error of law was committed. Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Cox v. Barnhart, 471 F.3d 902, 906 (8th Cir. 2006) (internal citation and quotation marks omitted).

The review of a decision to deny disability benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . [the court must also] take into account whatever in the record fairly detracts from that decision." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)). It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the decision of the Commissioner if that decision is supported by good reason and is based on substantial evidence. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005). A reviewing court may not reverse the Commissioner's decision " 'merely because substantial evidence would have supported an opposite decision.' " Reed, 399 F.3d at 920 (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)).

**DISCUSSION**

The Social Security Administration established a five-step sequential evaluation process for determining whether an individual is disabled. 20 CFR

3

§§ 404.1520(a)(4) and 416.920(a). If the ALJ determines a claimant is not disabled at any step of the process, the evaluation does not proceed to the next step as the claimant is not disabled. Id. The ALJ applied the five-step sequential evaluation required by the Social Security Administration regulations. (AR at pp. 12-23). During that evaluation process the ALJ concluded Ms. Gillaspie had a "residual functional capacity ["RFC"] to perform less than the full range of sedentary work . . . ." Id. at p. 14. Based on the record, the ALJ found "there are jobs that exist in significant numbers in the national economy that [Ms. Gillaspie] can perform . . . ." and determined Ms. Gillaspie was not disabled. Id. at p. 22-23. Ms. Gillaspie challenges the ALJ's decision on only one ground: Did the ALJ properly determine Ms. Gillaspie's credibility? (Docket 17 at p. 1).

**DID THE ALJ PROPERLY DETERMINE MS. GILLASPIE'S CREDIBILITY?**

At step two of the evaluation process the ALJ found Ms. Gillaspie had the following severe impairments: "migraine headaches; history of degenerative disc disease of the cervical spine, status post-surgery; degenerative disc disease of the lumbar spine; fibromyalgia;[3] and obesity . . . ." (AR at p. 12). In addition to these severe impairments, the ALJ found Ms. Gillaspie had non-severe impairments of anxiety, palpitations and hyperlipidemia. Id. at p. 13. The ALJ

---

[3]"Fibromyalgia is '[a] syndrome of chronic pain of musculoskeletal origin but uncertain cause. The American College of Rheumatology has established diagnostic criteria that include pain on both sides of the body, both above and below the waist, as well as in an axial distribution (cervical, thoracic, or lumbar spine or anterior chest). . . .' " Cumella v. Colvin, CIV. 5:12-5015-JLV, Docket 17 at p. 8 n.10 (citing Stedman's Medical Dictionary 148730 (27th ed. 2000).

found all three conditions were "well-controlled with medication," or "effectively controlled through medication" and that these conditions "no more than minimally affect[ed] [Ms. Gillapsie's] ability to perform basic . . . activities . . . ." Id.

In judging Ms. Gillaspie's credibility, the ALJ found:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

Id. at p. 15. For reasons discussed later in this order, the ALJ concluded "there exist good reasons for questioning the reliability of the claimant's subjective complaints." Id. at p. 21. Despite this conclusion, the ALJ "appl[ied] partial deference to the claimant's subjective complaints" and reduced her RFC "to sedentary work." Id.

Ms. Gillaspie argues the ALJ improperly "provided a laundry list of so called 'inconsistencies,' all of which can be shown to be unsupported by the record and many of which, when examined closely, provide excellent support for Gillaspie's disability claim." (Docket 17 at p. 3). Applying the directives of Brosnahan v. Barnhart, 336 F.3d 671, 678 (8th Cir. 2003), Ms. Gillaspie asserts the court must "find that the ALJ's rejection of Claimant's credibility is not supported by substantial evidence" and the court should "reverse and remand this case for a new hearing . . . ." Id. at p. 12.

5

"Fibromyalgia typically involves characteristics of 'chronic pain, stiffness, and tenderness of muscles, tendons, and joints without detectable inflammation.'" Cumella, CIV. 5:12-5015-JLV, Docket 17 at p. 13 (citing www.medicinenet.com/image-collection/fibromyalgia_picture/picture. htm). "It is common for a 'large majority of patients with fibromyalgia' to suffer from 'undue fatigue' and 'sleep disorders.'" Id. (same citation). "Fibromyalgia is considered an arthritis-related condition. However, it is not a form of arthritis . . . since it does not cause inflammation in the joints, muscles, or other tissues or damage them. But fibromyalgia can (like arthritis) cause significant pain and fatigue and it can similarly interfere with a person's ability to carry on daily activities." Id. (same citation). "Mental and/or emotional disturbances occur in over half of people with fibromyalgia. These symptoms include poor concentration, forgetfulness, and memory problems, as well as mood changes, irritability, depression, and anxiety . . . . Other symptoms of fibromyalgia include migraine and tension headaches, numbness or tingling of different parts of the body, abdominal pain related to irritable bowel syndrome . . . . Any of the above symptoms can occur intermittently and in different combinations." Id. at pp. 13-14 (citing www.medicinenet.com/ fibromyalgia/page2.htm). "Fibromyalgia is an elusive diagnosis; '[i]ts cause or causes are unknown, there's no cure, and of greatest importance to disability law, its symptoms are entirely subjective.'" Tilley v. Astrue, 580 F.3d 675, 681 (8th Cir. 2009) (quoting Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996)).

The ALJ determines the weight attributable to a claimant's subjective complaints, including pain, according to the framework created in Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). Five Polaski factors guide the ALJ's credibility determination: "1) the claimant's daily activities; 2) the duration, frequency, and intensity of the pain; 3) the dosage, effectiveness, and side effects of medication; 4) precipitating and aggravating factors; and 5) functional restrictions." Choate, 457 F.3d at 871. The ALJ need not mechanically discuss each of the Polaski factors. See Goff v. Barnhart, 421 F.3d 785, 791 (8th Cir. 2005). Although the ALJ can discount a claimant's subjective complaints for inconsistencies within the record as a whole, "the ALJ must make express credibility findings and explain the record inconsistencies that support those findings." Dolph, 308 F.3d at 879. The court will not disturb the decision of an ALJ who seriously considers but for good reason expressly discredits a claimant's subjective complaints. See Haggard v. Apfel, 175 F.3d 591, 594 (8th Cir. 1999).

In Brosnahan, the United States Court of Appeals for the Eighth Circuit held that an ALJ improperly determined a claimant suffering from fibromyalgia was less than credible when he based his determination on the claimant's activities of daily living and degree of treatment. "[W]e have held, in the context of a fibromyalgia case, that the ability to engage in activities such as cooking, cleaning, and hobbies, does not constitute substantial evidence of the ability to engage in substantial gainful activity." Brosnahan, 336 F.3d at 677 (citing

7

Kelley v. Callahan, 133 F.3d 583, 588-89 (8th Cir. 1998)). A number of treatment options for fibromyalgia, including exercise, are recognized.[4] Id. at 672, n.1 (the American College of Rheumatology indicates that treatment for fibromyalgia "include[s] cold and heat application, massage, exercise, trigger-point injections, proper rest and diet, and medications such as muscle relaxants, antidepressants, and anti-inflammatories.").

In this case, the ALJ considered the Polaski factors and conducted a detailed examination of Ms. Gillaspie's subjective pain and credibility. See AR at pp. 14-21. Following that analysis, the ALJ acknowledged:

> [Ms. Gillaspie] would inevitably experience some symptoms and limitations associated with her physical impairments, and her residual function capacity, as established above, accounts for a number of limitations. However, the overall record does not support additional physical restrictions. The claimant's treating providers have observed few difficulties on examination. Furthermore, despite the claimant's testimony that her ability to walk is greatly limited, her treating professionals have often noted a normal gait, normal strength and sensation. Additionally, despite the allegations of totally disabling symptoms, there is little indication of permanent restrictions placed on the claimant by a treating doctor. Instead, the claimant's treating professionals have actually advised the claimant to increase her activity and exercise. Furthermore, the claimant's failure to follow through with the recommendations of her providers suggests an unwillingness on her part to genuinely attempt to obtain relief from her allegedly disabling symptoms and suggests that her symptoms may not be as serious as alleged . . . .

AR at p. 21.

---

[4]"Low-impact aerobic exercises, such as swimming, cycling, walking, and stationary cross-country ski machines, can be effective fibromyalgia treatments." www.medicinenet.com/fibromyalgia/page4.htm.

Without repeating the evidence considered by the ALJ, the court finds the following chronology to be highly relevant to the credibility analysis. In Ms. Gillaspie's self-report to the Social Security Administration ("SSA") of August 9, 2011, she indicated having difficulty sleeping, difficulty dressing, difficulty completing her activities of daily living without assistance from others, having pain in her legs and back and only being able to walk 2 blocks. (Docket 16 ¶ 48). Ms. Gillaspie did not express these severe complaints during her two previous medical appointments in July 2011 or the two following appointments in late August and early September 2011.

On July 13, 2011, Dr. Sanchez found Ms. Gillaspie's post-surgical condition to be "asymptomatic except for occasional headaches." Id. ¶ 19. Dr. Sanchez determined Ms. Gillaspsie had a "good range of motion without significant limitations and good rotation," with good responsive strength in the areas of her cervical and thoracic spine. Id. On July 18, 2011, PA Erwin found some indication of lumbar pain upon palpitation but no other noted limitations. Id. ¶ 20. PA Erwin's only recommendation was for Ms. Gillaspie to "avoid aggravating activities." Id.

On August 30, 2011, just three weeks after Ms. Gillaspie's self-report to the SSA of August 9, 2011, Ms. Gillaspie did not report similar symptoms to PA Erwin. Id. ¶ 25. PA Erwin recommended an exercise program, to include swimming four days per week, and a sleep aid medication. Id.

On September 7, 2011, Ms. Gillaspie met with Dr. Stout, her rheumatologist. Id. ¶ 26. While Ms. Gillaspie reported low back pain, bilateral knee pain, pain radiating down both legs and pain in her mid-back and shoulders, Dr. Stout's examination found "good extension and flexion of her knees with no swelling . . ." and that her "fibromyalgia might be the best ever." Id.

Ms. Gillaspie's report to the SSA and her testimony at the hearing are not consistent with or supported by the objective medical evidence. Her statements of immobility and difficulties with dressing and performing various functions throughout the day are both inconsistent with her reports to her medical care providers and with their findings of the nature and extent of her limitations from fibromyalgia. Brosnahan, 336 F.3d at 677.

Contrary to the plaintiff's argument, the ALJ's findings are supported by the record. (AR at p. 21). "[T]he evidence as a whole supports the ALJ's conclusion that [Ms. Gillaspie's] testimony was credible to the extent that [she] has some pain, but not to the extent that [she] cannot perform any type of work." Haggard, 175 F.3d at 595. While the court notes there is evidence contrary to the findings of the ALJ, the decision to discount Ms. Gillaspie's credibility is supported by the substantial weight of the evidence. Guilliams, 393 F.3d at 801. Ms. Gillaspie's objection to the ALJ's credibility finding is overruled.

**ORDER**

Based on the above analysis, it is

ORDERED that plaintiff's motion (Docket 17) is denied.

IT IS FURTHER ORDERED that the decision of the Commissioner dated December 12, 2012, is affirmed.

Dated September 4, 2015.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE